### NANCY GORDON v. BENTON HARRIS.

Orphans' Court. Sussex. March, 1823.

*Ridgely's Notebook IV, 154.*

*Wells* for the petitioner. *Robinson, Cooper, Cullen* for the respondent. . . .

THE CHANCELLOR. The first question to be decided is whether the petitioner was bound to prove a seisin in James Gordon, her deceased husband. The petition alleges a seisin, and that was necessary, because it was incumbent on the petitioner to state a title to dower; and without the seisin of her husband she could not be entitled, and the respondent might have put the petitioner to prove the fact, by denying the seisin. But if the respondent pleads matter which goes to the whole demand, and, if true, will defeat the claim of the petitioner, then the petitioner need not prove the seisin, for the respondent admits it, by placing his defense upon a separate and distinct matter. In his pleas he first defends himself by debts existing against the husband before the passing the late Act of Assembly [5 Del.Laws 174], and under which he alleges that he now holds the land. Secondly, that there existed a debt due to him from Gordon, the husband, before the passing said Act of Assembly, upon which judgment was recovered and execution sued out, and the land sold to him by the sheriff on that execution process. The petitioner joins issue upon these pleas, and the sole matter of inquiry with the Court is whether the petitioner is barred by Harris's own debt or by any other debts existing before the passing the late Act of Assembly. The inquiry then does not go to the seisin of the husband, for that fact is not denied; but we are directed by the pleas to another and distinct defense, which, if true, defeats the petitioner as effectually as if the seisin of the husband were denied and found against her. The evidence must be confined to the issue, and the petitioner was not bound to prove the seisin, for it has not been denied. This objection cannot avail the respondent.

Secondly, the pleas in bar of this claim of dower are, first, that before the passing of the Act respecting devises of land, joint estates and dower, February, 1816, 5 Del.Laws 174, there were divers debts, liens, and incumbrances made, entered into, contracted and created by the husband, and now existing, under which Benton Harris, the respondent, holds and claims said lands and tenements. The second plea is that before the said Act of the General Assembly was passed, there did exist a debt due to him, the said Benton, contracted by the said husband, and for which judgment was obtained, and under which judgment said lands were sold by the sheriff to said Benton by virtue of execution process.

The debts referred to in the first plea are a judgment recovered in the Court of Common Pleas, November 24, 1817, on a promissory note dated October 5, 1815, for $50, given by Gordon, the husband, to David Paynter; and another judgment re-

covered by James Clifton in the Court of Common Pleas, September 23, 1818, on a single bill for $30, dated March 23, 1815; and a recognizance acknowledged in the Orphans' Court by Gordon, April 22, 1800, on the acceptance of land for real dower, $1003.20. These are the only debts which are exhibited in their original creation. The recognizance, it is probable from the testimony of Mr. Samuel Paynter, has been satisfied. No claim has been made upon it for now nearly twenty-three years, and Harris did not purchase on any execution issued thereon. If these three debts remain unsatisfied, the sheriff will look to that in the application of the purchase money. Although the note to D. Paynter and the bill to Clifton have been extinguished by the judgments recovered on them since the date of the Act of Assembly, yet I apprehend that they are incumbrances which have a preference to the widow's dower; for it could not be the intention of the legislature that the means used to enforce their payment should operate so as to make null the providing clause, which declares that liens and incumbrances existing before the passing the Act shall not be affected or destroyed.

The Act was not designed to operate in favor of dower against existing debts, which are incumbrances. And therefore a judgment recovered on any such debt, after the passing the Act, though the defendant may in other respects be extinguished by the judgment, cannot have the effect of giving the widow a preference; for that would be indirectly to defeat a debt or incumbrance, as to the dower, which the legislature say shall not be affected or destroyed. But this question is not before the Court. It has been alluded to in the argument, and the petitioner's counsel agrees that, if they have not been satisfied, they are still incumbrances, though on two of them judgments have been recovered since the date of the Act. Upon these judgments it does not appear that execution process has been sued out; and a judgment merely is not sufficient to bar a widow's dower. If it were, a judgment for $100 might defeat a widow's dower in land worth $10,000.

The argument most relied on by the counsel for the respondent arises under both pleas. They urge that the before mentioned debts, and the debts due to the Farmers' Bank, to Samuel Paynter and to the respondent himself, were all originally created before the passing the Act of the General Assembly. Gordon owed two debts to the Bank; one in 1812 on promissory notes, for which he gave his bond for $350, September 22, 1818; the other on notes before 1816, which were renewed by a note dated May 2, 1820, for $300, upon which judgment was recovered October 9, 1820. So he owed Samuel Paynter on a bond dated May 6,

1813, and on book and other dealings before the year 1816, $1335.83½. When Mr. Paynter took his bond on July 10, 1816, he included in it the debt due on bond, the book account and dealings existing before 1816, and gave up to Gordon the bond of May 6, 1813. Gordon also owed to B. Harris, the respondent, a debt on bond dated June 11, 1816, on which judgment was entered June 12, 1816. On March 22, 1819, Harris took a new bond for the money due on the judgment and entered satisfaction on the record, the same day, by another judgment bond. These debts to the Bank, to Paynter and to Harris, they say were not extinguished, and that they were liens or incumbrances existing in the year 1816, before the Act of Assembly was passed. It is contended that the subsequent securities did not extinguish these debts; that the debts remained until the money was paid, and however the forms of the securities were altered, the money not being paid, the incumbrances existed still.

The debt of $350 due to the Bank on notes was extinguished by the bond of September 22, 1818, so that, although the incumbrance existed before the passing the Act, it ceased to exist as an incumbrance by the act of the creditor, and is not a debt created by the husband since the marriage, from which the dower is freed and discharged by the express words and meaning of the Act.

The $300 due to the Bank on notes given before 1816 were included in the note of the 2nd May 1820. But are these notes in existence? They are not shown to the Court, nor proved to be still held by the Bank. The acceptance of a security of equal degree is not an extinguishment of a debt, unless there were an agreement that it should be so. 5 Term 513, *Kearslake v. Morgan*. The party pleading these original notes should show their existence. The clear presumption is that they were given up or destroyed when the last notes were made. Mr. Tunnell, the cashier, says this was the last note for this debt. If the other notes were retained, and this last note was given merely as a collateral security, then the former notes are existing incumbrances; but all this should be proved by the party who relies on them as a defense. The suit brought and judgment recovered on the note of May, 1820, pretty clearly demonstrate that the last note was relied on as the security for the debt, and that the former are not in existence.

Mr. Paynter gave up to Gordon the bond of May 6, 1813, when he took the bond of July 10, 1816; and that act, together with the last bond, extinguished the bond of 1813 and all accounts and dealings before July 10, 1816. So as to Harris' entering satisfaction on the judgment obtained on his bond of June 11, 1816, no

debts of Harris previous to June, 1816, have been shown. The entry of satisfaction by another judgment bond clearly extinguishes the judgment. The bond had been extinguished by the judgment.

None of these are debts existing before the passing the Act, and therefore do not bar this claim of dower. The land was sold under Harris' judgment entered on a bond dated March 20, 1819. And unless the debt upon which the land was sold existed at the time the Act passed, the purchaser could not have a title against the dower.

Judgment for the petitioner.